*EX PARTE* LEWIE, *IN RE* GEIGER v. DRAFTS.

1. The Court of Common Pleas, as the general fountain of justice, has jurisdiction of every invasion of legal civil rights where no special direction is given; but where a statutory right is created and its enforcement and protection are conferred upon a designated tribunal other than that court, it has no jurisdiction in the matter.
2. The Court of Common Pleas has no original jurisdiction of a petition filed by a widow in May, 1880, for a homestead in her deceased husband's estate.

Before ALDRICH, J., Lexington, February, 1881.

This was a petition for homestead presented by Mrs. Carrie S. Lewie, widow of Dr. F. S. Lewie. Dr. Lewie died in June, 1873, considerably in debt, but it does not appear that there were any judgments against him. The most valuable part of testator's lands were sold in 1874 by the executors under a power in the will. In March, 1875, an action in the nature of a creditor's bill was instituted by H. H. Geiger against S. P. Drafts and D. J. Griffith, as executors of the will of Dr. Lewie. It does not appear that there were any other parties to this action except those named, but creditors were called in. It was in this action that Mrs. Lewie presented her demand for dower in 1876, and received its equivalent out of the proceeds of sale. Nothing seems to have been done in the cause after 1876 until this proceeding, although still open on the dockets. The petition for homestead was entitled in the same cause. The summons is dated January 15, 1880 ; the petition is without date. Both summons and petition were served May 13, 1880.

The Circuit decree granted the prayer of the petition, and the executors of Dr. Lewie appealed. ·

Messrs. *H. A. Meetze*, *H. W. Rice*, for appellants.

Messrs. *T. S. Arthur*, *G. T. Graham*, contra.

April 17, 1882. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. Dr. F. S. Lewie, late of Lex-

ington county, died in June, 1873, possessed of considerable property, real and personal. At the time of his death he owned a homestead at Summit in said county. This homestead was occupied by one of the appellants, and Lewie boarded with this party. He left a will in which, after providing for the payment of his debts and one or two special legacies and devises, he gave one half of the rest and residue of his estate of every kind to his wife, the respondent, to whom he had been married about a month before his death. The appellants and the respondent were nominated as executors of this will; the respondent renounced and the appellants qualified.

Shortly after his death the respondent left the county and found employment in Washington city, in the Treasury Department of the United States Government. She was under the impression that the estate was solvent, and that she would ultimately realize something from the will. Creditors, however, commenced proceedings and the estate turned out not only heavily indebted, but insolvent, and under a proceeding which had been originated in 1875 to marshal assets, etc., she came in by petition and obtained the sum of $1,437.50 in lieu of dower in the real estate of her husband. In the mean time the creditors had sold the whole estate, except a tract of land in the county containing some 200 acres, known as the Hall or Black Allmon tract, worth, it is said, about $300; a lot in Summit, of little value, given in the will to one W. F. Oswalt; and one third interest in a small lot of five acres in or near Columbia. At the sale made by the executors in 1874 the homestead at Summit was bought by the appellant Drafts for $1050. Drafts has since sold this property to J. H. Lewie for $500. Subsequent references have developed the fact that the appellants as executors have paid for the estate something over $6000 more than they have received. This was because they were sureties on many of the debts due by the estate.

Under these circumstances the respondent filed her petition in the Circuit Court in May, 1880, for homestead. The matter was referred by Judge Hudson to a referee for a full report of all the facts connected with the estate, reserving the question of the jurisdiction of this court over the matter of assign-

ment of homestead. Under this reference a report was made with a mass of testimony, which at the next term came up before Judge Fraser, who recommitted the report for further testimony, with instructions " to report any facts bearing on the right of homestead and the value thereof."

The referee made a second report in January, 1881, in which with other facts, not material here, he stated that the respondent left Summit very soon after the death of her husband in 1873, and since that time has resided elsewhere, with no intention to return; that she had claimed and received dower; that the executors had been in constant communication with her and had never received intimation of her purpose to claim homestead until this proceeding.

This report, with certain exceptions by respondent, came to a hearing before Judge Aldrich, who, finding as matter of fact that the respondent had not left the county permanently and had not abandoned her home, adjudged and decreed that she was entitled thereto, and ordered the executors, appellants, to set her off a homestead both real and personal. The precise property out of which this was to be done was not specified. The defendants executors have appealed, assigning error in the decree of Judge Aldrich on several grounds; but from the view which we take of this case it will be unnecessary to state or consider these grounds.

In our opinion the Circuit Court was without jurisdiction of respondent's petition in its inception. This question does not seem to have been distinctly made below or in the argument here, but in our examination we have reached the conclusion that the Circuit Court had no jurisdiction, and therefore no appeal upon the merits could properly come before this court. It is therefore useless for us to pronounce any judgment upon the legal questions involved. The Court of Common Pleas is the general fountain of justice, and where the rights of a citizen, either derived from the common law or the statutes, are invaded and the power to protect is conferred upon no special jurisdiction, he may seek redress in that court. But where rights are created by statute, to be obtained and protected in a special manner specified in the act and by a

special tribunal, no other court can assume jurisdiction. On the contrary, parties interested must pursue the course prescribed, and must seek the aid of the tribunal upon which the power to grant or protect has been conferred. *Howze* v. *Howze*, 2 *S. C.* 232.

Now under the homestead acts all power in cases involving the rights to widows and children as to homesteads is conferred upon the Probate Courts in the first instance. The petition to obtain it must be made to that court, and the act prescribes the machinery to be adopted by which that court may have the homestead marked out, defined, and set off, and the mode by which the judgment may be made binding on the parties interested. On the other hand, none of these powers are conferred upon the Common Pleas Court. Parties are not authorized to petition that court, nor is it invested with the power to appoint appraisers and put in motion the other machinery necessary to mark out and define the homestead required by the acts made and provided in such cases.

Our conclusion, therefore, is that the petition of respondent, whatever may be the merit involved or the rights of the parties, had no foundation in the Circuit Court because of the want of jurisdiction on the part of that court, and the case should have been dismissed.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and the case be remanded with instructions to dismiss the petition for the want of jurisdiction, without prejudice to the rights of the petitioner in such proceedings as she may hereafter institute, as she may be advised.

[NOTE.—The doctrine of this case is in accord with the decision of the court in *Kennedy* v. *Reames*, 15 *S. C.* 552. In *Howze* v. *Howze*, 2 *S. C.* 232, there was no special tribunal designated, and therefore the Court of Common Pleas had jurisdiction under the principles here declared by the chief-justice. See, too, *Adger* v. *Bostick*, 12 *S. C.* 64. In decisions upon the homestead laws, however, care must be taken to note which one of the many statutes on this subject the court is considering. In this case, for instance, the court construes the act of 1873 (15 *Stat.* 372), which is not now of force. By Section 8 of that act the head of any family, widow, or children, entitled to an estate or right of homestead, and where no process had been lodged with any officer against such homestead, might make application to the judge of the Probate Court, and all subsequent proceedings in the mat-

ter were to be had in that court. In the subsequent act of 1880 (17 *Stat.* 516), however (now of force as Section 2002 of the General Statutes), the application is to be made to the master or clerk of court, and all proceedings after the filing of the return by the appraisers are to be had in the Circuit Court. In the act of 1873, and also in the statute now of force, this right of application to the master or clerk (formerly probate judge) can be made only where *no process has been lodged with any officer against such homestead.* In the principal case no such process had been lodged. What is the proper mode of procedure where such process has been lodged in the sheriff's office but no action is being taken to enforce it by reason of the creditor's indulgence,—or because, the debtor being dead, his estate is being administered in the Court of Equity, and the claim of homestead is there asserted in the answer of the widow or children,—must be settled by some future case. REPORTER.]